UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| Janet Mavis Marcusse, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Civil Action No. 12-1025 (CKK) |
| United States Department of Justice Office of Information Policy *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Plaintiff Janet Mavis Marcusse challenges the defendants' responses to her requests for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. She sues three Department of Justice ("DOJ") components, the Department of the Treasury ("Treasury") and its component Internal Revenue Service ("IRS"), and the Board of Governors of the Federal Reserve System ("BOG"). Defendants have filed two separate dispositive motions. In this ruling, the Court considers Defendants' Partial Motion to Dismiss and for Summary Judgment filed on behalf of DOJ's Executive Office for United States Attorneys ("EOUSA"), DOJ's Office of Information Policy ("OIP"), Treasury, and BOG [Dkt. # 16].[1] Plaintiff has not filed a timely opposition and has not asserted anything in her Motion for Reconsideration [Dkt. # 34] that could reasonably be construed as opposing the instant motion. *See* July 24, 2013 Min. Order & Supplement [Dkt. # 35] (indicating that the Court might consider plaintiff's arguments in the motion to reconsider that address defendants' arguments for dispositive relief).

---

[1] The Defendants' Partial Motion to Dismiss and for Summary Judgment brought on behalf of the FBI and IRS [Dkt. # 25] is considered separately.

1

Upon consideration of the moving defendants' motion and the relevant parts of the record, including the Complaint, the Court finds that these defendants have satisfied their disclosure obligations under the FOIA and are entitled to judgment as a matter of law. Hence, the instant motion will be granted.

## BACKGROUND

Plaintiff is serving a 25-year sentence imposed by the United States District Court for the Western District of Michigan following her convictions for "mail fraud, conspiracy to commit mail fraud, and money laundering in connection with the[] operation of a fraudulent investment scheme." *U.S. v. Flynn*, 256 Fed. Appx. 434, 436, 439 (6th Cir. 2008). This action arose from plaintiff's various FOIA requests for records pertaining seemingly to every aspect of her criminal case. Although the complaint purports to present nineteen "Cause[s] of Action," the first ten causes or claims are in reality allegations devoted to plaintiff's FOIA request dated October 6, 2009, Causes Eleven through Fourteen are allegations devoted to plaintiff's FOIA request dated May 12, 2009, and Causes Fifteen through Sixteen are allegations devoted to plaintiff's FOIA request dated March 16, 2006, to the FBI. The Seventeenth Cause of Action concerns plaintiff's FOIA request to the IRS dated October 19, 2010, and the Eighteenth Cause of Action concerns plaintiff's FOIA request dated April 9, 2012. The Nineteenth Cause of Action merely "alleges that [plaintiff] should have been provided with a Vaughn Index in the previously described 18 causes of action when the defendants failed to provide or denied her FOIA requests." Compl. ¶ 221.

The Court will address plaintiff's three FOIA requests applicable to the moving defendants in the order that they appear in the Complaint. The relevant facts thoroughly

documented by the government in its Partial Statement of Material Facts as to Which There is No Genuine Dispute [Dkt. # 16] follow.

**October 6, 2009 Request**

On October 6, 2009, plaintiff requested from EOUSA 17 categories of records about which IRS Agent James Flink had allegedly testified to at plaintiff's criminal trial. The categories cover particulars about investors, investor deposits, banks, bank records, checks, and wire transfers. *See* Decl. of Kathleen Brandon [Dkt. # 16-1], Ex. R (FOIA Request). In addition, plaintiff requested information about "fees paid" or "deals cut confidential informants or other individuals . . . .," the Western Union records of herself and two other individuals, the "original notes or records from [portions of the trial] transcript" recording her testimony and the testimony of certain witnesses, and "proof [a named individual] was convicted for 'investment fraud' by federal authorities." *Id.* EOUSA assigned a tracking number for the requested first-party records and a separate tracking number for the requested third-party records. Brandon Decl. ¶ 22.

Following a search for responsive records in the U.S. Attorney's Office for the Western District of Michigan (hereafter "USAO-WDM"), EOUSA released 257 unredacted pages to plaintiff on April 13, 2010, that were responsive to her first-party records request. *Id.*, Ex. U. EOUSA informed plaintiff that it did not possess certain items she had requested and that she was entitled only to public records pertaining to third-party individuals. EOUSA further informed her that any plea agreements were available through the district court. *Id.* On administrative appeal, the OIP affirmed EOUSA's decision "on partly modified grounds." *Id.*, Ex. X. OIP informed plaintiff that EOUSA did not search for third-party records and to the extent that such records exist, they were protected by FOIA exemption 7(C) absent third-party consent, proof of death, official acknowledgement of an investigation, or an overriding public

interest in disclosure.[2] *Id.* In addition, OIP informed her that the FOIA does not require agencies to answer questions, create records in response to a request, or certify that documents are "true" or "real" versions. *Id.*

On November 3, 2009, EOUSA denied plaintiff's request for third-party records since she had not provided authorizations from the subjects of her requests to release records, proofs of death, or "public justification for release." *Id.*, Ex. Y. EOUSA informed plaintiff that such information is generally exempt from disclosure under the Privacy Act and FOIA's privacy exemptions 6 and 7(C). In response to plaintiff's appeal asserting in part that one of the subjects of her request, Robert Plaster, had died, OIP, on March 1, 2010, affirmed EOUSA's decision in part and remanded it in part for EOUSA to conduct a search for records pertaining to Plaster. *Id.*, Ex. BB. On June 4, 2010, EOUSA released in full 43 responsive pages consisting of Plaster's trial testimony and portions of one page with third-party personal information redacted under exemptions 6 and 7(C). Brandon Decl. ¶ 37 & Ex. GG. OIP affirmed this decision on September 7, 2010. *Id.*, Ex. JJ.

**May 12, 2009 Requests**

On May 12, 2009, plaintiff requested from OIP six categories of records, including (1) the search warrant, affidavit, and inventory of items she claims were "seized" from her attorney, Gurmail Sidhu, in July 2004, (2) "applications, authorizations, affidavits, or other documents in regards to 'tax protester' classification or profiling," (3) the same in regards to " 'terrorist' or 'enemy combatant' classification or profiling," (4) "[a]ny National Security letter authorized and issued, along with supporting documents and affidavits," (5) FBI Form 302s, and (6) IRS Memorandum of Interview "MOI's". Brandon Decl., Ex. KK. OIP referred this request to

---

[2] *See* 5 U.S.C. § 552(b) (listing FOIA's exemptions).

EOUSA on May 12, 2009, *id*., Ex. LL, and on June 8, 2009, EOUSA referred the request to the FBI and IRS for processing and a direct response to plaintiff, *id*., Ex. OO.[3]

Staff at USAO-WDM searched its computer and card files but located no records "specifically under the name of Gurmail Sidhu." Decl. of Kristina Zelasko [Dkt. # 16-4] ¶ 6. A search of plaintiff's criminal case file, consisting of five boxes and five volumes of exhibit books, *id*., located responsive records, Brandon Decl. ¶¶ 46-47. On August 31, 2009, EOUSA referred 112 pages to the FBI and 22 pages to the IRS for each component to process the respective pages and respond directly to plaintiff. Brandon Decl., Ex. QQ.

Also on May 12, 2009, plaintiff requested the same categories of records from Treasury. Decl.of Hugh Gilmore [Dkt. # 16-2], Ex. 1. When plaintiff did not respond to Treasury's letter dated May 26, 2009, to provide specific information necessary to "begin processing [the] request," *id*., Ex. 2, Treasury closed plaintiff's request in accordance with 31 C.F.R. § 1.5(a). *Id*. ¶ 9.

**April 9, 2012 Request**

On April 9, 2012, plaintiff requested from EOUSA "Form USA 207, DEC 00 Notice to Close Legal Case File" and "[a]ny similar form authorizing the disposition or destruction of files." Brandon Decl., Ex. e. EOUSA determined that one of three cases associated with plaintiff in the USAO-WDM included such a form and released the form in its entirety on July 10, 2012. Zelasko Decl. ¶¶ 15-16; Brandon Decl. Ex. i.

---

[3] *See* 28 C.F.R. § 16.4(c) (authorizing a DOJ component to refer records in its possession to another component or U.S. agency upon a determination that the other entity "is better able to determine whether the record is exempt from disclosure and, if so, whether it should be disclosed as a matter of administrative discretion"); *id*. § 16.4(d) (requiring the "receiving component" of a request for law enforcement information not originating there to refer or consult the component or agency from where such information originated).

**Records Referred to EOUSA**

On January 14, 2011, the FBI referred two documents to EOUSA that were potentially responsive to plaintiff's May 12, 2009, request. Brandon Decl. ¶¶ 52-53 & Ex. SS. The documents consisted of seven pages of "correspondence from the USAO/WDM to a victim of a criminal investigation, and correspondence from the USAO to a defense attorney concerning a third party client's potential proffer." *Id.* ¶ 54. EOUSA informed plaintiff on February 15, 2011, that it determined that the documents were not responsive to the May 12, 2009 request, *id.*, Ex. TT; OIP affirmed this decision on August 15, 2011, adding that plaintiff's "name was not referenced in any of the seven [referred] pages." *Id.*, Ex. WW.

On May 3, 2011, the FBI referred three documents to EOUSA consisting of 20 pages that were potentially responsive to plaintiff's May 12, 2009, request. *Id.*, Ex. XX. On May 23, 2011, EOUSA informed plaintiff that it had reviewed 30 pages referred from the FBI and was withholding them in full under FOIA exemptions 5, 6, and 7(C) because they were draft plea agreements involving third-party criminal defendants. *Id.* ¶ 61 & Ex.YY. On September 21, 2011, OIP affirmed this decision "on partly modified grounds," namely exemptions 6 and 7(C) only. *Id.*, Ex. b.

On June 20, 2011, the FBI referred four documents to EOUSA consisting of 14 pages of correspondence that were potentially responsive to plaintiff's May 12, 2009, request. *Id.* ¶ 66 & Ex. c. Save a one-page letter addressed to plaintiff from USAO-WDM, the correspondence pertained to third parties. *Id.* On June 29, 2011, EOUSA released the letter addressed to plaintiff with third-party information redacted and withheld the remaining 13 pages in full under exemptions 6 and 7(C). *Id.*, Ex. d. EOUSA has no record of plaintiff appealing this decision to OIP. *Id.* ¶ 69.

**Request to the Board of Governors**

Although plaintiff's FOIA request to BOG is not the subject of any count of the Complaint, BOG is a named defendant and has appropriately responded to the complaint. On June 20, 2011, plaintiff requested from BOG "any information or documents about Suisse Security Bank & Trust, Nassau, Bahamas" and about "Swiss Mercantile Bank Corporation, Paradise Island or Nassau, Bahamas." Decl. of Jeanne M. McLaughlin [Dkt. # 16-3], Ex. A. Following searches of BOG's databases, its FOIA tracking system, and the Internet, *id*. ¶¶ 5-11, BOG failed to locate responsive records in its files, as was the case in response to a similar request from plaintiff in 2006. *Id*. ¶¶ 11-12. However, on June 30, 2011, BOG did provide plaintiff with "publicly available information" it had obtained from the Internet. *Id*. ¶ 9 & Ex. B.

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). The FOIA authorizes the court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records

improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, the elements of a FOIA claim are (1) improperly (2) withheld (3) agency records. "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5 U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). The disclosure requirement generally covers only those records that are in the agency's custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has

proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

Agency declarations are accorded "a presumption of good faith[.]" *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted). To rebut the presumption, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). In properly opposing a summary judgment motion, a plaintiff may not merely "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) ("In other words, 'uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.' ") (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011)) (alteration omitted).

## DISCUSSION

Defendants argue that they are entitled to summary judgment because they conducted reasonable searches in response to plaintiff's FOIA requests and produced all non-exempt responsive records. Defs' Mem. of P.& A. [Dkt. # 16] at 12-22. In the alternative, defendants argue that some of plaintiff's claims against EOUSA and Treasury should be dismissed for failure to exhaust administrative remedies. *Id*. at 22-24.

Dismissal for Failure to Exhaust

Treasury's response to plaintiff's May 12, 2009, request did not advise plaintiff about her right to appeal the determination and thus "was insufficient under the FOIA to trigger the

exhaustion requirement[.]" *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 67 (D.C. Cir. 1990); *see id*. at 65 ("A[n] [agency's] response is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and *notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse*.") (emphasis supplied) (citations omitted). Regardless, Treasury properly closed plaintiff's request because she had not complied with its FOIA regulations. Gilmore Decl. ¶ 9; *see* 31 C.F.R. § 1.5(a)(1) ("If a requester does not respond within 30 days to a communication from a bureau to amend the request in order for it to be in conformance with this subpart, the request file will be considered closed.").

An agency's disclosure obligation is triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). Since it not disputed that plaintiff failed to respond to Treasury's reasonable request for additional information so that it could process her broadly worded May 2009 request, the Court finds either that it lacks jurisdiction over this claim since no improper withholding has yet occurred, *see Trupei v. Bur. of Customs and Border Prot*., No. 07-0475, 2008 WL 249878 (D.D.C. Jan. 29, 2008), or that no claim capable of being redressed has been stated. Hence, the Court will dismiss the claim arising from Treasury's response to the May 2009 request, albeit on a different ground from that advanced by the defendants.

On the other hand, the factual record is sufficiently developed to resolve the claims against EOUSA on the merits, and the FOIA's exhaustion requirement is not jurisdictional. *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003). Hence, the Court declines defendants' invitation to dismiss some of the claims against EOUSA for plaintiff's failure to exhaust administrative remedies with EOUSA.

### The Adequacy of Defendants' Searches

In determining the adequacy of a FOIA search, the court is guided by principles of reasonableness, *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998), mindful that an agency is required to produce only those records in its custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (citations omitted).

In demonstrating that a search was adequate, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations and quotation marks omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "Once the agency has shown that its search was reasonable, the burden shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. Nat'l Sec'y Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

The Court is satisfied from the moving defendants' unrefuted declarations describing their searches that EOUSA and BOG conducted searches reasonably calculated to locate all responsive records. *See* Zelasko Decl. ¶¶ 4-16 (EOUSA); McLaughlin Decl. ¶¶ 5-10 (BOG).

Defendants' Claimed Exemptions

As the Brandon declaration has shown, EOUSA withheld third-party information and third-party records under FOIA's privacy exemptions 6 and 7(C). Although both exemptions are properly invoked, the Court will address only exemption 7(C) since it is obvious from the requests themselves that the records plaintiff seeks were compiled for her criminal prosecution and, thus, satisfy exemption 7's threshold law enforcement requirement. *See* 5 U.S.C. § 552(b)(7) (protecting from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . ." would cause certain enumerated harms); *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester] explicitly sought records related to his own criminal prosecution").[4]

In enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). As a direct outgrowth of this concern, Congress crafted exemption 7(C), which permits agencies to withhold from disclosure records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §

---

[4] Because exemption 7(C) is somewhat broader than exemption 6, s*ee Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004), the Court need not address exemption 6 separately. In any event, the D.C. Circuit "has deemed the privacy inquiry of exemptions 6 and 7(C) to be essentially the same." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

552(b)(7)(C). In assessing an agency's claim under exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure, *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006), and, as a general matter, the identification of an individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names . . . of third parties," as such information is not probative of an agency's performance of its statutory responsibilities. *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). More recently, the D.C. Circuit has determined that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored. That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution.

*Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (citations and internal quotation marks omitted). Hence, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome [e]xemption 7(C)'s protection for personal privacy under the test outlined [*Favish*]." *Id*. (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)).

Under the *Favish* test, plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged

13

Government impropriety might have occurred." *Id*. at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75.

In her Complaint, plaintiff makes widespread, unsubstantiated accusations of governmental misconduct during her criminal prosecution that may be summed up as follows:

> In order to obtain a grand jury indictment, conduct their criminal trial, and pursue a direct appeal, the Office of U.S. Attorney, CI Division IRS Agents, and FBI Agents in the Western District of Michigan engaged in evidence tampering with their chief exhibits to promote a nonexistent crime after the first grand jury did not return an indictment, fabricated unreported income claims to invent motive, and destroyed documents and records or refused to produce documents and records in response to a discovery order from U.S. Tax Court.

Compl. ¶ 2. The fact that plaintiff has been unsuccessful on direct appeal and in post-conviction proceedings, *see Marcusse v. U.S.*, No. 1:09-CV-913, 2012 WL 5306258, at *2 (W.D. Mich. Oct. 26, 2012) (finding that plaintiff's "33 remaining claims for collateral relief lack merit"), tends to belie her claim of "a nonexistent crime." Regardless, as a general rule applicable here, plaintiff's personal stake in obtaining documents in order to attack her conviction "does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *judgment reinstated*, 378 F.3d 1115 (D.C. Cir. 2004); *see Pugh v. FBI*, 793 F. Supp. 2d 226, 233 (D.D.C. 2011) ("That the FBI's denial of [plaintiff's] FOIA requests may hinder his efforts to challenge his conviction or sentence . . . is irrelevant."). Furthermore, "courts must insist on a meaningful evidentiary showing," *Favish*, 541 U.S. at 175, to even consider the competing interests. Plaintiff's "litany of allegedly suspicious [but unsubstantiated] circumstances" surrounding her prosecution, much like that of the plaintiff in *Blackwell*, "has not come close to meeting the demanding *Favish* standard for challenging [EOUSA's] invocation of FOIA [e]xemption 7(C)."

14

*Blackwell*, 646 F.3d at 41. Hence, summary judgment is warranted on the moving defendants' application of exemption 7(C) to the withheld third-party information.

## CONCLUSION

For the foregoing reasons, the Court finds no genuinely disputed material fact with regard to the moving defendants' satisfaction of their disclosure obligations under the FOIA and concludes that these defendants are entitled to judgment as a matter of law. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
DATE: August 12, 2013          United States District Judge