**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Janet Mavis Marcusse,    :
           :
     **Plaintiff,**  :
   **v.**       :    **Civil Action No. 12-1025 (CKK)**
           :
United States Department   :
of Justice Office of Information :
Policy *et al.*,       :
           :
    **Defendants.**  :

## MEMORANDUM OPINION

Plaintiff Janet Mavis Marcusse challenges the defendants' responses to her requests for

records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  She sues three

Department of Justice ("DOJ") components, the Department of the Treasury ("Treasury") and its

component Internal Revenue Service ("IRS"), and the Board of Governors of the Federal

Reserve System ("BOG").  Defendants have filed two separate dispositive motions.  What

remains is Defendants' Partial Motion to Dismiss and for Summary Judgment filed on behalf of

the FBI and the IRS.[1]

Plaintiff has not filed a timely opposition but in her Motion for Reconsideration [Dkt. #

34], she questions the authenticity of some of the more than 10,000 pages the IRS produced to

her on December 21, 2012.  *See* Pl.'s Mot. to Reconsider at 3-5; July 24, 2013 Min. Order &

Supplement [Dkt. # 35] (indicating that the Court might consider any of plaintiff's arguments in

the motion to reconsider that address defendants' arguments for dispositive relief and giving

---

[1]  On August 12, 2013, the Court granted the Defendants' Partial Motion to Dismiss and for
Summary Judgment as to DOJ's Executive Office for United States Attorneys, DOJ's Office of
Information Policy, the Department of the Treasury, and the Board of Governors of the Federal
Reserve System.  *See* Mem. Op. [Dkt. # 37] & Order [Dkt. # 36].

defendants seven days to file any reply); Decl. of Deborah Lambert-Dean [Dkt. # 25-8], Ex. AA (IRS's Dec. 21, 2012, letter releasing 10,960 pages of public records). Defendants have not replied to plaintiff's assertions or briefed the propriety of the IRS's release in December 2012. Hence, the Court, finding from the relevant parts of the record that the FBI and the IRS have otherwise satisfied their disclosure obligations under the FOIA , will grant the instant motion in part and deny it in part without prejudice.

## BACKGROUND

Plaintiff is serving a 25-year sentence imposed by the United States District Court for the Western District of Michigan following her convictions for "mail fraud, conspiracy to commit mail fraud, and money laundering in connection with the[] operation of a fraudulent investment scheme." *U.S. v. Flynn*, 256 Fed. Appx. 434, 436, 439 (6th Cir. 2008). This action arose from plaintiff's various FOIA requests for records pertaining seemingly to every aspect of her criminal case. Although the complaint purports to present nineteen "Cause[s] of Action," the first ten causes or claims are in reality allegations devoted to plaintiff's FOIA request dated October 6, 2009, Causes Eleven through Fourteen are allegations devoted to plaintiff's FOIA request dated May 12, 2009, and Causes Fifteen through Sixteen are allegations devoted to plaintiff's FOIA request dated March 16, 2006, to the FBI. The Seventeenth Cause of Action concerns plaintiff's FOIA request to Treasury dated October 19, 2010, and the Eighteenth Cause of Action concerns plaintiff's FOIA request dated April 9, 2012. The Nineteenth Cause of Action merely "alleges that [plaintiff] should have been provided with a Vaughn Index in the previously described 18 causes of action when the defendants failed to provide or denied her FOIA requests." Compl. ¶ 221. The facts relevant to the instant motion follow.

**March 16, 2006 Request to the FBI**

On March 16, 2006, plaintiff requested from FBI Headquarters information "in regards to two [attached] letters allegedly written and signed by a former employee named Gerard M. Forrester." Decl. of David M. Hardy [Dkt. # 25-1], Ex. D. On April 11, 2006, the FBI denied plaintiff's request under FOIA exemptions 6 and 7(C) since she had not provided a privacy waiver from Forrester or proof of his death.[2] *Id.*, Ex. H. The FBI included a privacy waiver form with the response and informed plaintiff about her right to appeal to the Office of Information and Privacy ("OIP"). *Id.*

Also on March 16, 2006, plaintiff requested from the FBI field office in Miami, Florida, information "in regards to a bank in Nassau, Bahamas, that had its license revoked in March or April of 2001." *Id.*, Ex. E. Plaintiff indicated that the request concerned "Suisse Security Bank & Trust." *Id.* On April 18, 2006, FBI Headquarters informed plaintiff that "a search of the automated indices to our central records system files located no records in our Miami Field Office . . . to indicate the subject of your request has ever been of investigatory interest to the FBI," and informed plaintiff about her right to appeal to OIP. *Id.*, Ex. I.

**May 12, 2009 Request to the FBI**

On May 12, 2009, plaintiff requested from FBI Headquarters six categories of records, including (1) the search warrant, affidavit, and inventory of items she claims were "seized" from her attorney, Gurmail Sidhu, in July 2004, (2) "applications, authorizations, affidavits, or other documents in regards to 'tax protester' classification or profiling," (3) the same in regards to " 'terrorist' or 'enemy combatant' classification or profiling," (4) "[a]ny National Security letter authorized and issued, along with supporting documents and affidavits," (5) FBI Form 302s, and

---

[2]　*See* 5 U.S.C. § 552(b) (listing FOIA's exemptions).

(6) IRS Memorandum of Interview "MOI's". *Id.*, Ex. K. On June 12, 2009, the FBI informed

plaintiff that it had located an investigative file but was withholding the requested records under

exemption 7(A) because the records "could reasonably be expected to interfere with [a pending

or prospective law enforcement proceeding]." *Id.*, Ex. O. But on appeal, OIP determined that

exemption 7(A) did not apply and remanded plaintiff's request for the FBI to "send any and all

releasable records . . . ." *Id.*, Ex. S.

Consequently, the FBI reviewed 2,807 responsive pages contained in six of ten volumes

of files and provided 2,220 pages to plaintiff in six releases between September 13, 2010, and

June 13, 2011. Hardy Decl. ¶ 66; *see id.*, Ex. W (releasing 246 of 261 pages reviewed); Ex. Z

(releasing 348 of 418 pages reviewed); Ex. CC (releasing 184 of 356 pages reviewed); Ex. II

(releasing 288 of 366 pages reviewed); Ex. OO (releasing 261 of 393 pages reviewed); Ex. SS

(releasing 893 of 1,013 pages reviewed). The FBI withheld 587 pages in full "either due to

application of a FOIA exemption or because they were duplicates of released pages." Hardy

Decl. ¶ 66.[3] With each release, save the sixth, plaintiff paid the assessed fees. *Id.* In addition,

plaintiff exercised her right to appeal to OIP, albeit unsuccessfully, the determinations of the

first, second, third, and fifth releases. *Id.* ¶ 67, n.4.

On September 1, 2011, OIP informed plaintiff that two of her pending appeals were

closed because she had failed to pay within 30 days the amount of $89.30 in duplication fees she

owed for the sixth interim release on June 13, 2011. *Id.*, Ex. UU. Plaintiff was further informed

that she would "be required to substantiate that you have paid this debt before this Office takes

action on these or any new appeals you submit." *Id.* On June 21, 2012, the FBI informed

plaintiff that her "pending FOIA requests" were "being closed immediately due to lack of

---

[3] The Bates-stamped pages marked with the asserted exemptions are attached to the Hardy Declaration as Exhibit ZZ. Pages withheld in full are indicated by a deleted page sheet.

payment for [the foregoing] duplication fees." *Id.*, Ex. YY.  The FBI informed plaintiff about

DOJ's regulation providing that when a requester has failed to pay an assessed fee within 30

days of the billing date, a component could require payment in the full amount, plus interest,

before processing a new FOIA request or continuing to process a pending request.  *Id.*

### May 12, 2009 Request to the IRS

Also on May 12, 2009, plaintiff requested the same six categories of records from

Treasury that she had requested from the FBI.  Lambert-Dean Decl., Ex. A.  The IRS opened a

file, however, in response to EOUSA having forwarded the same request to the IRS on June 17,

2009.  *Id.* ¶ 7.  After determining that the request concerned a criminal investigation, IRS staff

purportedly searched the Integrated Data Retrieval System "to see whether the IRS's Criminal

Investigation function had a case involving Plaintiff."  *Id.*  On July 15, 2009, the IRS informed

plaintiff that no responsive records were located and enclosed "Notice 393 explaining your

appeal rights."  *Id.* ¶ 7 & Ex. B; *see also* Ex. C (responding to duplicate request).  The IRS has

no record of plaintiff having appealed this determination.  *Id.* ¶ 10.

During the course of this litigation, the IRS "search[ed] for, and process[ed]" documents

responsive to plaintiff's May 12, 2009, request and her October 18, 2010, request that is not the

subject of a count of the underlying complaint.  Lambert-Dean Decl. at 13.  On December 21,

2012, the IRS released 10,960 pages "consist[ing], in their entirety, of information made public

as exhibits in your federal prosecution."  *Id.*, Ex. AA.  The IRS redacted social security numbers

under exemption 6.  *Id.*

### October 19, 2010 Request to the IRS

On October 19, 2010, plaintiff requested from the IRS information pertaining to

"monetary award recipients in [her] criminal case, including amount paid, name, and agency."

*Id.*, Ex. H.  Having interpreted the request as seeking information about a confidential informant, *id.* ¶ 16, the IRS informed plaintiff on November 16, 2010, that it was denying her request under FOIA exemption 3 (in conjunction with 26 U.S.C. § 6103(a)) and exemption 7(D).  *Id.*, Ex. I.   In her appeal of that decision, plaintiff states that "the disclosure I am seeking is in reference to my own tax return information," but she then refers to the alleged testimony and statements of other individuals during her criminal trial and concludes that she is "most interested in those monetary awards paid to [21 listed] federal government employees at the time."  *Id.*, Ex. J.  The list contains the names of four IRS agents, five assistant United States attorneys, two magistrate judges, four judges, two FBI agents, two United States attorneys, and two federal public defenders.  *Id.* at 2.  On January 5, 2011, the Appeals Office affirmed the IRS's determination and advised plaintiff of her right to seek judicial review.  *Id.*, Ex. K.

### Records Referred to the FBI[4]

In response to a referral of records from EOUSA, the FBI released 96 of 112 pages reviewed on February 2, 2010.  Hardy Decl., Ex. R.  Ninety-three pages were released with redactions.  In addition, ten pages were withheld as duplicative of released pages and six pages

---

[4]    *See* 28 C.F.R. § 16.4(c) (authorizing a DOJ component to refer records in its possession to another component or U.S. agency upon a determination that the other entity "is better able to determine whether the record is exempt from disclosure and, if so, whether it should be disclosed as a matter of administrative discretion"); *id.* § 16.4(d) (requiring the "receiving component" of a request for law enforcement information not originating there to refer or consult the component or agency from where such information originated).  An improper withholding under the FOIA may result if the "net effect [of the referral procedure] is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them."  *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998) (citation and internal quotation marks omitted).  Plaintiff has not challenged the referrals, and the Court finds nothing amiss in the referral and consultation procedures defendants utilized in responding to plaintiff's requests.

were withheld in full.  The FBI withheld information under FOIA exemptions 2, 6, 7(C), and

7(D).  *Id*.; Ex. ZZ (pages 1429-1540).

**Records Referred to the IRS**

On January 14, 2011, the FBI, in processing plaintiff's May 12, 2009, request, referred 92

pages of records to the IRS, 10 of which originated with the IRS and 82 of which originated with

the FBI but contained information pertaining to the IRS.  *Id*. ¶ 22.  The IRS informed plaintiff on

February 18, 2011, that it was withholding under exemptions 3, 7(C) and 7(D) the ten IRS pages

because they consisted "in their entirety of MOIs [Memoranda of Interviews] with witnesses

conducted by CI Special Agents assigned to the Grand Jury investigation of Plaintiff."  Lambert-

Dean Decl. ¶ 23 & Ex. P.  As to the 82 pages about which the FBI consulted the IRS, the IRS

identified information on 81 pages that it recommended be withheld in full under exemptions 3

and 7(C).  *Id*., Ex. P1.  On February 28, 2011, the FBI informed plaintiff that following

consultation with the IRS, it was withholding the records in full under exemption 3.  Hardy

Decl., Ex. FF.  On February 28, 2011, plaintiff appealed the IRS's withholding of the ten IRS

pages, stating that "[t]he exemptions cited obstruct my right to Jencks and Brady information"

pertinent to her criminal trial.  Lambert-Dean Decl., Ex. Q.  On April 12, 2011, the Appeals

Office explained the limits of its "jurisdiction" and affirmed the IRS's decision.  *Id*., Ex. R.

On April 22, 2011, the FBI referred 18 documents consisting of 58 pages (one a

transmittal sheet) to the IRS.  Hardy Decl. ¶ 71; Lambert-Dean Decl. ¶ 102.  Since 57 of those

pages, too, consisted entirely of "MOIs with witnesses conducted by CI Special Agents assigned

to the Grand Jury investigation of Plaintiff," the IRS informed plaintiff on June 1, 2011, that it

was withholding the 18 documents in full under exemptions 6, 7(C), 7(D), and 7(E).  Lambert-

Dean Decl. ¶ 28 & Ex. T. The Appeals Office affirmed this determination on July 13, 2011. *Id.*, Ex. V.

On June 17, 2011, the IRS received its third referral from the FBI consisting of four pages of the same type of MOIs. *Id.* ¶¶ 32-33. On August 23, 2011, the IRS informed plaintiff that it was withholding the four pages in full under exemption 7(C). *Id.*, Ex. X. The Appeals Office affirmed this decision on September 22, 2011. *Id.*, Ex. Z.

### **Records Referred from the FBI**

In April 2011, the FBI referred four documents totaling 17 pages to the U.S. Customs and Border Protection ("CPB") to process and provide a direct response to plaintiff. Hardy Decl. ¶ 72. CPB processed three of the referred pages and forwarded the fourteen remaining pages to U.S. Immigration and Customs Enforcement ("ICE"). *Id.* On September 13, 2011, CPB released two redacted pages and informed plaintiff that it was withholding information under exemptions 6, 7(C) and 7(E) and informed her about her right to appeal. Decl. of Jacky Joseph Saint Juste [Dkt. # 25-10], Ex. A. The third page is a cover sheet that the FBI has released in full. Hardy Decl. at 18 n.8. CPB has no record of plaintiff appealing its decision. St. Juste Decl. ¶ 7.

On December 7, 2012, ICE informed plaintiff that it had processed five pages containing information that originated with ICE and was releasing the pages with information redacted under exemptions 3, 6 and 7(C). ICE *Vaughn* Index, Ex. A [Dkt. # 25-12]. The FBI processed the remaining seven pages that were originally referred to CPB, in consultation with "ICE to provide context." Hardy Decl. ¶ 72.

Also in April 2011, the FBI referred one page to the Department of Labor, which, in turn, "consulted with the FBI and provided to the FBI its proposed [three] redactions" of the name and

telephone number of an investigator under exemptions 6 and 7(C).  Decl. of Sharon Watson [Dkt. # 25-11] ¶ 4.  "The FBI marked the page in accordance with [Labor's] instructions" and presumably released the page accordingly.  Hardy Decl. ¶ 73 & Ex. ZZ (Marcusse-1233).

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions.  *See* 5 U.S.C. § 552(b).  The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  The FOIA authorizes the court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Thus, the elements of a FOIA claim are (1) improperly  (2) withheld (3) agency records.  "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5 U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation."  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).  The disclosure requirement generally covers only those records that are in the agency's custody and

control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

Agency declarations are accorded "a presumption of good faith[.]" *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted). To rebut the presumption, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). In properly opposing a summary judgment motion, a plaintiff may not merely "replace conclusory

allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) ("In other words, 'uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.' ") (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011)) (alteration omitted).

## DISCUSSION

Defendants argue that they are entitled to summary judgment because both the FBI and IRS conducted reasonable searches in response to plaintiff's FOIA requests and produced all non-exempt responsive records. *See* Defs' Mem. of P.& A.[Dkt. # 25] at 4-42. In the alternative, defendants argue that some of plaintiff's claims against the FBI and IRS should be dismissed for failure to exhaust administrative remedies. *Id*. at 42-45.

### Dismissal for Failure to Exhaust

Under the FOIA, "[e]xhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.' " *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). In this context, the doctrine is "jurisprudential" and "not jurisdictional." *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Generally speaking, a plaintiff's "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id*. at 1258-59 (quoting *Oglesby*, 920 F. 2d at 61). The exhaustion requirement ensures that "the agency has an

opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. *Oglesby*, 920 F.2d at 61. In addition, an agency's disclosure obligation is triggered by its receipt of a request that, *inter alia*, "is made in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to follow." 5 U.S.C. § 552(a)(3)(A); see § 552(a)(4)(A) (authorizing the setting of "reasonable standard charges" for document search and duplication). Thus, a requester's failure to pay assessed fees also constitutes a failure to exhaust.

Defendants have presented valid arguments for dismissal of certain claims under both types of exhaustion. As a general rule applicable here, a FOIA requester must pay any reasonably assessed fees before obtaining judicial review. *See Rosenberg v. U.S. Dep't of Immig. and Customs Enforcement*, No.12-0452, --- F. Supp. 2d ---, 2013 WL 3803899, at * 8 (D.D.C. July 23, 2013) ("The fact that a fee request was made after the [p]laintiff commenced litigation does not excuse the [p]laintiff from paying the requested fees.") (citing *Pollack v. Dep't of Justice*, 49 F.3d 115, 120 (4th Cir.1995), *cert denied*, 516 U.S. 843 (1995)) (other citations omitted). Plaintiff has not refuted defendants' evidence showing that she owes the FBI $89.30 for the sixth interim release. Hardy Decl. ¶ 66. Hence, the FBI acted properly under the applicable DOJ regulation, 28 C.F.R. § 16.11(i), when it suspended its processing of the remaining four volumes of records potentially responsive to plaintiff's May 12, 2009, request.[5]

---

[5] The regulation states in relevant part:

> (3) Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before the component begins to process a new request or continues to process a pending request from that requester.

In addition, plaintiff has not refuted defendants' evidence that she failed to appeal administratively the CPB's partial release of the records referred from the FBI, St. Juste Decl. ¶ 7, and the IRS's no records response to plaintiff's May 12, 2009, request, Lambert–Dean Decl. ¶ 10, though the IRS's response appears to be moot in light of its subsequent "search for, and processing of, responsive documents." *Id*. at 13. Nor has plaintiff refuted defendants' assertion of the same about the FBI's fourth release. Defs' Mem. at 44. *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 98 Fed.Appx. 8 (D.C. Cir. 2004) (noting that a court may treat unaddressed arguments in support of a dispositive motion as conceded).

The Court, finding no genuinely disputed fact on the exhaustion question, will grant defendants' motion to dismiss any claim arising from (1) the IRS's no-records response to the May 12, 2009, request, (2) the FBI's fourth and sixth interim releases, and (3) the FBI's decision to suspend the processing of the remaining four volumes of records. Since the record contains sufficient information for the Court to assess CPB's partial release of FBI-referred records, *see* St. Juste Decl. and supporting exhibits, the Court declines defendants' invitation to dismiss this claim for failure to exhaust.

<u>The Adequacy of Defendants' Searches</u>

In determining the adequacy of a FOIA search, the court is guided by principles of reasonableness, *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998),

---

(4) In cases in which a component requires advance payment or payment due under paragraph (i)(2) or (3) of this section, the request shall not be considered received and further work will be done on it until the required payment is received.

28 C.F.R. § 16.3(i)

mindful that an agency is required to produce only those records in its custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (citations omitted).

In demonstrating that a search was adequate, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations and quotation marks omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "Once the agency has shown that its search was reasonable, the burden shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. Nat'l Sec'y Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

The Court is satisfied from defendants' unrefuted declarations describing the files searched and the search methods employed that the FBI and IRS conducted searches reasonably

calculated to locate all responsive records.  *See* Hardy Decl. ¶¶ 59-65; Lambert-Dean Decl. ¶¶ 37-42.

Defendants' Claimed Exemptions

Plaintiff has not contested defendants' asserted exemptions.  The Court finds from Hardy's explanations and its examination of the Bates-stamped pages themselves that the FBI properly withheld information under FOIA exemptions 3, 6, 7(C), 7(D), and 7(E), and has properly withdrawn its exemption 2 claim.  *See* Hardy Decl. ¶ 76 & n.9.  In addition, the Court finds from Lambert-Dean's explanations that the IRS properly justified withholding the third-party records plaintiff sought in her October 19, 2010, request under exemption 6.  *See* Lambert-Dean Decl. ¶¶ 58-59.

Exemption 3

FOIA Exemption 3 covers matters that are "specifically exempted by statute . . . provided that such statute either (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The FBI properly applied this exemption to grand jury information and information protected by the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5319.  Hardy Decl. ¶ 78 ("Summary of Justification Categories").

The FBI withheld "information obtained through the BSA during the course of its criminal investigative activities," Hardy Decl. ¶ 84, and the BSA specifically exempts from FOIA disclosure "a report and records of reports" made available to an agency under that statute. 31 U.S.C. § 5319.

The "statute" applicable to the grand jury information is Federal Rule of Criminal Procedure 6(e), which requires secrecy for grand jury proceedings.  Rule 6(e) qualifies as a

statute for purposes of exemption 3 because it was affirmatively enacted by Congress.  *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F. 2d 856, 867-68 (D.C. Cir. 1981).  Rule 6(e) bars disclosure of information that would "tend to reveal some secret aspect of the grand jury's investigation such . . . as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *Senate of the Commonwealth of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (internal quotation marks omitted).  The FBI withheld "details concerning a Federal Grand Jury subpoena, including the name and identifying information of an individual subject to a . . . subpoena and information that identifies specific records or evidence [the grand jury] subpoenaed."  Hardy Decl. ¶ 80.  Since disclosure of a grand jury subpoena containing the details Hardy describes would reveal some secret aspect of the grand jury's investigation, the FBI properly withheld such information under exemption 3. *See Kishore v. Dep't of Justice*, 575 F. Supp. 2d 243, 255 (D.D.C. 2008) (finding that grand jury subpoenas may not be disclosed under Rule 6(e)).

Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In determining whether the exemption applies, courts look "not to the nature of the files," but rather to "the nature of the information" at issue.  *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc ) (quotation marks omitted).  If the information "applies to a particular individual," then the threshold for application has been met.  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  From there, the question becomes whether public disclosure would constitute a "clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). "If a substantial privacy interest is at stake, then [the district court] must balance the privacy interest in non-disclosure against the public interest." *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009), *cert. denied*, --- U.S. ---, 130 S.Ct. 2140 (2010). In this regard, "[t]he only relevant public interest . . . is the extent to which disclosure would serve the core purpose of FOIA, which is contributing significantly to public understanding of the operations or activities of government." *Id.* at 1051 (quotation marks, notations, and emphasis omitted).

The IRS invoked this exemption to withhold what it reasonably interpreted (and what plaintiff has not refuted) to be a request for "monetary performance awards paid to [certain named IRS agents] for their work with respect to the Grand Jury Investigation and prosecution of [plaintiff] and her co-defendants." Lambert-Dean Decl. ¶ 59. Information about "performance based awards" is contained in personnel files, *id.*, and therefore satisfies exemption 6's threshold requirement. In addition, for the reasons discussed next, the record contains no basis to compel the release of this otherwise exempt information as being in the public's interest.

Exemption 7(C)

As the Hardy declaration has shown, the FBI withheld categories of third-party identifying information under FOIA's privacy exemptions 6 and 7(C). *See* Hardy Decl. ¶¶ 78, 87-102. Although both exemptions are properly invoked, the Court, as was done in the earlier ruling, will address only exemption 7(C) since it is obvious from the requests themselves that the records plaintiff seeks were compiled for her criminal prosecution and, thus, satisfy exemption 7's threshold law enforcement requirement. *See* 5 U.S.C. § 552(b)(7) (protecting from disclosure "records or information compiled for law enforcement purposes . . . to the extent that

the production of such law enforcement records or information . . . ." would cause certain enumerated harms); *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester] explicitly sought records related to his own criminal prosecution").[6] For each category of records, the FBI assessed whether the "individual privacy rights outweighed the public interest," and "determined that the individuals' privacy interests were not outweighed by any public interest in disclosure" of information that could identify them and potentially subject them to "harassment, embarrassment and/or humiliation." Hardy Decl. ¶ 88.

In enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). As a direct outgrowth of this concern, Congress crafted exemption 7(C), which permits agencies to withhold from disclosure records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In assessing an agency's claim under exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure, *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006), and, as a general matter, the identification of an individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). Therefore,

---

[6] Because exemption 7(C) is somewhat broader than exemption 6, s*ee Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004), the Court need not address exemption 6 separately. In any event, the D.C. Circuit "has deemed the privacy inquiry of exemptions 6 and 7(C) to be essentially the same." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

"[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names . . . of third parties," as such information is not probative of an agency's performance of its statutory responsibilities. *Mays v. Drug Enforcement Admin*., 234 F.3d 1324, 1327 (D.C. Cir. 2000). More recently, the D.C. Circuit has determined that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored. That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution.

*Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (citations and internal quotation marks omitted). Hence, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome [e]xemption 7(C)'s protection for personal privacy under the test outlined [*Favish*]." *Id.* (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)).

Under the *Favish* test, plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id.* at 174-75.

As the Court noted about the Complaint in the earlier ruling, plaintiff makes widespread, unsubstantiated accusations of governmental misconduct during her criminal prosecution that may be summed up as follows:

> In order to obtain a grand jury indictment, conduct their criminal trial, and pursue a direct appeal, the Office of U.S. Attorney, CI Division IRS Agents, and FBI Agents in the Western District of Michigan engaged in evidence tampering with their chief exhibits to promote a nonexistent crime after the first grand jury did not return an indictment, fabricated unreported income claims to invent motive, and destroyed documents and records or refused to produce documents and records in response to a discovery order from U.S. Tax Court.

Compl. ¶ 2.  The fact that plaintiff has been unsuccessful on direct appeal and in post-conviction proceedings, *see Marcusse v. U.S.*, No. 1:09-CV-913, 2012 WL 5306258, at *2 (W.D. Mich. Oct. 26, 2012) (finding that plaintiff's "33 remaining claims for collateral relief lack merit"), tends to belie her claim of "a nonexistent crime."  Regardless, as a general rule applicable here, plaintiff's personal stake in obtaining documents in order to attack her conviction "does not count in the calculation of the public interest."  *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *judgment reinstated*, 378 F.3d 1115 (D.C. Cir. 2004); *see Pugh v. FBI*, 793 F. Supp. 2d 226, 233 (D.D.C. 2011) ("That the FBI's denial of [plaintiff's] FOIA requests may hinder his efforts to challenge his conviction or sentence . . . is irrelevant.").  Furthermore, "courts must insist on a meaningful evidentiary showing," *Favish*, 541 U.S. at 175, to even consider the competing interests. Plaintiff's "litany of allegedly suspicious [but unsubstantiated] circumstances" surrounding her prosecution, much like that of the plaintiff in *Blackwell*, "has not come close to meeting the demanding *Favish* standard for challenging [EOUSA's] invocation of FOIA [e]xemption 7(C)." *Blackwell*, 646 F.3d at 41.  Hence, summary judgment is warranted on the moving defendants' application of exemption 7(C) to the withheld third-party information.

Exemption 7(D)

Exemption 7(D) allows agencies to withhold information in law enforcement records where the public disclosure of such information "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by the confidential source." 5 U.S.C. § 552(b)(7)(D). To properly invoke this exemption, an agency must show either that the source provided information to the agency under an express assurance of confidentiality or that the circumstances support an inference of confidentiality. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179-81 (1993).

The FBI applied this exemption to the identifying information of an individual who was granted an express assurance of confidentiality, information supplied by an individual granted an express assurance of confidentiality, and a confidential source file number that could potentially lead to the identity of the individual. Hardy Decl. ¶¶ 78, 106-12. The express assurances are documented by "the term 'Protect Identity' or a similar phrase in the body of the FD-302" interview form. *Id.* ¶¶ 106, 108. Summary judgment is warranted on this claimed exemption. *See Schoenman v. F.B.I.*, 763 F. Supp. 2d 173, 200 (D.D.C. 2011) (stating, as is the case here, "the FBI credibly explains, in a reasonably detailed and non-conclusory manner, that the information at issue in each instance was received in connection with an express grant of confidentiality and describes how the public disclosure of such information would have a chilling effect on the cooperation of other sources and thereby hinder its ability to gather confidential information."); *see id.* (citing cases where "courts have upheld identical withholdings in the past").

Exemption 7(E)

Exemption 7(E) authorizes an agency to withhold

> records or information compiled for law enforcement purposes, but only to
> the extent that the production of such law enforcement records or
> information . . . would disclose techniques and procedures for law
> enforcement investigations or prosecutions, or would disclose guidelines for
> law enforcement investigations or prosecutions if such disclosure could
> reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).  The FBI applied this exemption to "a procedure and technique utilized

by [its Special Agents] during the Access Financial Group investigation" to collect data from

public sources" collected by "ChoicePoint and other database reports . . . ."  Hardy Decl. ¶ 114.

Hardy states that although the information contained in the sources is publicly available,

"the manner in which the data is searched, organized and reported to the FBI as an internal

technique [is] not known to the public," and is "developed by ChoicePoint to meet the [FBI's]

specific investigative needs[.]"  *Id.*  Hardy further states that disclosure of the information could

reasonably be expected to risk circumvention of the law because it "would divulge a specific law

enforcement technique that could allow an individual to alter their behavior in order to avoid

detection by the particular system or the information that the system captures."  *Id.*  Defendants

are entitled to summary judgment on this claimed exemption.  *See Rosenberg*, 2013 WL

3803899, at *13 (determining that Hardy adequately explained the potential harm in disclosing

information revealing the FBI's "internal investigative methodology in the investigation of

financial crimes").

Record Segregability

The Court is required to make a finding as to whether defendants have shown that they

released all reasonably segregable non-exempt information.  *See Trans-Pacific Policing*

*Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (placing an

"affirmative duty" on the district court to address record segregability). " 'The question of segregability is subjective based on the nature of the document in question, and an agency must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable.' " *Rosenberg*, 2013 WL 3803899, at *7 (quoting *Cater, Fullerton & Hayes LLC v. Fed. Trade Comm'n*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007)) (other citation omitted).

Hardy states throughout his declaration that the respective document was reviewed for segregability and concludes that "[t]he FBI [] carefully examined the responsive document and [] determined that the information withheld from plaintiff, if disclosed, could reveal information protected by statute" and that "all reasonably segregable, non-exempt information has been released . . . ." Hardy Decl. ¶ 115. The Court is satisfied from its own examination of the voluminous redacted pages and the deleted page sheets that such a review occurred. Furthermore, defendants have shown that all reasonably segregable portions of records the FBI referred to other agencies were produced. *See* St. Juste Decl. ¶ 18 (stating that a "line-by-line" review of records referred to CBP was conducted for segregability); ICE's *Vaughn* Index & redacted pages. Hence, the Court finds that the FBI has produced all reasonably segregable, non-exempt information responsive to the FOIA requests forming the basis of the complaint. In addition, the Court finds that the IRS properly withheld the third-party records responsive to plaintiff's October 19, 2010, request in full under FOIA exemption 6.

## CONCLUSION

For the foregoing reasons, the Court finds no genuinely disputed material fact with regard to the moving defendants' satisfaction of their disclosure obligations under the FOIA and concludes that both the FBI and the IRS are entitled to judgment as a matter of law on the issues

that have been briefed.  Since defendants have not briefed the propriety of the IRS's release of more than 10,000 pages in December 2012, and plaintiff has raised questions about some of the released pages, the Court will deny defendants' motion as to this release and will direct supplementation of the record.  A separate Order accompanies this Memorandum Opinion.


_____s/s_____
COLLEEN KOLLAR-KOTELLY
DATE:   August 26, 2013                    United States District Judge